**In re CUTTY'S, INC., Debtor.**

**No. 02–42988.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 27, 2005.

Richard G. Zellers, Esq. and Melody Dugic Gazda, Esq., Canfield.

Douglas W. Snoeyenbos, Esq., United States Department of Justice, Ben Franklin Station, Washington, DC.

Kristin L. Anders, Esq., Canonsburg, PA.

Saul Eisen, United States Trustee, Cleveland.

## ORDER

KAY WOODS, Bankruptcy Judge.

On November 18, 2004, the United States of America (the "United States"), a creditor and party in interest, filed a motion, pursuant to 11 U.S.C. § 1112(b)(2), to convert the Chapter 11 bankruptcy case of Cutty's, Inc. ("Cutty's") to one under Chapter 7. In response thereto, Fremont National Bank of Canon City ("Fremont Bank"), a secured creditor and party in interest, submitted additional information to the Court but neither joined in nor opposed the motion to convert. Cutty's filed a response to the United States' motion to convert and requested the Court to overrule the same. A hearing on the motion to convert was held on January 18, 2005, at which the above three parties plus the United States Trustee all appeared.

By way of background, Cutty's filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on July 10, 2002. To date, neither Cutty's nor any other party has filed a disclosure statement or a plan of reorganization. Cutty's operates a private membership campground near Coaldale, Colorado. The Department of the Treasury—Internal Revenue Service ("IRS") has filed a claim in the amount of Eleven Million Nine Hundred Forty–Nine Thousand Four Hundred Forty–Nine and 65/100 Dollars ($11,949,449.65) in Cutty's bankruptcy case. The claim of the IRS is based on taxes owed by Cutty's, Cutty's Hayden Creek (which counsel for Cutty's admitted in its response to the motion and at the hearing was an alter ego for Cutty's), as well as All Seasons Resorts, Inc. and Travel America, Inc. The IRS claim against Cutty's includes taxes owed by All Seasons Resorts, Inc. and Travel America, Inc. on the basis that they are alter egos of Cutty's.

The United States' motion to convert has two bases, as follows: (1) Cutty's has no prospect of confirming a plan of reorganization in this case, even in the event that it successfully contests liability for unpaid tax debts of All Seasons Resorts, Inc. and

Travel America, Inc.;[1] and (2) Cutty's failed to file federal income tax returns for the years 2002 and 2003 and it also failed to pay all of its post-petition taxes.[2] The United States argues that, based upon the scheduled assets, Cutty's has only one asset of any significant value—*i.e.*, the Coaldale real estate property—which Cutty's scheduled as having a value of Seven Hundred Ten Thousand Dollars ($710,000.00). Cutty's owes Fremont Bank secured debt in the amount of Five Hundred Eighty–One Thousand Seven Hundred Five and 83/100 Dollars ($581,705.83), exclusive of accrued but not yet billed attorneys' fees, as of November 22, 2004. The United States argues that the amount of debt that would have to be paid in full at confirmation to the IRS (relating *only* to Cutty's and Cutty's Hayden Creek without taking into consideration the alter ego theory) is One Hundred Twenty–Six Thousand Five Hundred Eighty–Nine and 17/100 Dollars ($126,589.17) (secured) and Fifty–Eight Thousand Two Hundred Seventy–One and 93/100 Dollars ($58,271.93) (priority more than six years old). Based upon Cutty's operating statements for the past 12 months, the United States contends that Cutty's cannot propose a confirmable plan.

Fremont Bank's response provided the Court with information that is instructive. Fremont Bank indicates that Cutty's schedules show the bank's secured claim as Two Hundred Fifty–Seven Thousand Dollars ($257,000.00), and has repeatedly listed this claim at the deflated amount in its monthly operating reports despite having entered into a consensual cash collateral order that stipulated that, as of the petition date, Fremont Bank's claims totaled Four Hundred Seventy–Eight Thousand Seven Hundred Thirty–Eight and 80/100 Dollars ($478,738.80). After entering into the consensual cash collateral order, which was approved by the bankruptcy court on May 13, 2004 (the "Stipulated Order"), Cutty's has at least twice tendered checks to Fremont Bank that were returned for insufficient funds (although they were ultimately replaced with checks that cleared). Fremont Bank also states that it is "increasingly troubled by the number of inter-company transfers that are apparently being made, not on any obvious recurring schedule, but with an alarming frequency and in apparently random increments of $500 or $1,000." Fremont Bank expressed "serious and legitimate concern" that Cutty's would quickly default under any confirmed plan, noting that this is Cutty's third reorganization proceeding in as many venues over the past 15 years (the first was filed in the United States Bankruptcy Court for the District of Iowa in 1989 and the second was filed in the United States Bankruptcy Court for the Central District of California in 1994). The bank alleges that each of those prior cases resulted in confirmation of a plan of reorganization, but that Cutty's soon defaulted under each of the plans.

Cutty's response to the United States' motion argues that it does not have liability for all of the taxes asserted by the IRS.[3] Cutty's also argues that it "can in fact

1. Both parties concede that there is a dispute with respect to the amount of liability owing to the IRS. Cutty's disputes that it has any liability for taxes, based on an alter ego theory, attributable to All Seasons Resorts, Inc. and Travel America, Inc.

2. On the eve of the hearing, Cutty's filed federal income tax returns for the years 2002 and 2003, indicating that it had incurred a loss and no taxes were due. Cutty's contends that this action moots a portion of the argument of the United States.

3. Cutty's did not file an objection to the IRS claim until January 14, 2005—one business day prior to the hearing on the United States' motion.

reorganize" on the basis that the secured debt, subject to the cash collateral order, will survive a plan of reorganization and that Cutty's has made all payments under that cash collateral order since it was entered in May.

The United States Trustee stated on the record that it did not oppose or join in the United States' motion, but expressed doubts about the feasibility of any plan that Cutty's could propose.

It is difficult to assess whether Cutty's can effectuate a plan of reorganization without having any documents to review. Cutty's case has been pending now for more than 30 months without any attempt to file a disclosure statement or a plan of reorganization. Cutty's counsel's statement to the Court that a plan of reorganization and a disclosure statement would be filed by the end of the year did not materialize. See page 6 of Cutty's Response to the United States Motion to Convert and Request of the Court to Overrule Same (Docket No. 85) filed December 3, 2004. ("As indicated to this Court on a number of occasions, a plan of reorganization and disclosure statement will be filed in this matter by the end of the year.") The only reason that Cutty's counsel gave for failure to file a plan by the end of December 2004 was that he had been busy responding to the United States' motion and preparing for the hearing. As a consequence, this Court hereby orders Cutty's to file a disclosure statement and a plan of reorganization within 60 days of entry of this order. Failure to file a plan of reorganization and a disclosure statement within that time period will result in this Court granting the United States' motion to convert this case to one under Chapter 7. After having time to review any timely filed disclosure statement and plan of reorganization, the United States can either with-

draw its motion or file a supplement indicating why such plan is not feasible.

**IT IS SO ORDERED.**